UNITED STATES of America,
Plaintiff–Appellant,

v.

Darrel SIMPSON; Robert Anderson;
James Freeman,
Defendants–Appellees.

No. 89–50196.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 1990.

Decided March 6, 1991.

John J. Byrne, Jr., Sp. Atty., U.S. Dept. of Justice, Los Angeles, Cal., for plaintiff-appellant.

Joshua C. Needle, Alan Baum and J. Brendan O'Neill, Santa Monica, Cal., for defendants-appellees.

Before NELSON, BRUNETTI and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

Under their supervisory power, courts have substantial authority to oversee their own affairs to ensure that justice is done. They do not, however, have a license to intrude into the authority, powers and functions of the coordinate branches. Judges are not legislators, free to make laws guided only by their moral compass or notions of national interest; nor are they executive officers, vested with discretion over law enforcement policy and decisions. Thus, while the supervisory power does empower judges to formulate procedural rules not specifically contemplated by Congress or the Constitution, *United States v. Hasting*, 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983), it does not "justify a chancellor's foot veto over activities of coequal branches of government." *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir.1985) (quoting *United States v. Russell*, 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973)) (internal quotations omitted).

Today we consider whether a judge may dismiss an indictment under the supervisory power because he disapproves of the government's investigatory tactics.

### Facts

FBI agent Hamer received a tip from the Canadian Mounted Police that Darrel Simpson was suspected of being an international drug smuggler. Agent Hamer began an investigation and employed Helen Miller as an informant. Miller was a prostitute, heroin user and fugitive from Canadian justice; but otherwise she was okay. Hamer sent her and another informant to the Los Angeles International Airport to see if they could meet up with Simpson. They did, and in a big way: A sexually and emotionally intimate relationship of some duration developed between Simpson and Miller. Upon Miller's request or prompting, Simpson procured heroin. Miller then introduced him to FBI agent Hamer, who made several purchases. Simpson was arrested. Throughout the investigation, Miller engaged in pastimes unbecoming someone on the federal payroll: prostitution, heroin use and shoplifting. In addition, the FBI allowed Miller to keep a $10,000 profit from one of the heroin sales she arranged.

The district court dismissed the indictment against Simpson on the grounds that the government's conduct was so outrageous that it violated due process. On appeal, we reversed, holding that the government's behavior was not so outrageous as to violate the Constitution.

*United States v. Simpson,* 813 F.2d 1462 (9th Cir.), *cert. denied,* 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987). We did not address whether the court could dismiss the indictment under the supervisory power. *Id.* at 1465 n. 2.

On remand, the district court again dismissed the indictment, this time relying on its supervisory power. The government appeals.

## Discussion

### I

■ The Supreme Court has recognized only three legitimate bases for the exercise of the supervisory power: to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct. *Hasting,* 461 U.S. at 505, 103 S.Ct. at 1978; *United States v. Gonsalves,* 781 F.2d 1319, 1320 (9th Cir. 1986); *Gatto,* 763 F.2d at 1044.

■ The district court identified no violation of any statute or constitutional right as a basis for its exercise of the supervisory power.[1] Although the court was rightfully disturbed by the less-than-exemplary conduct of the government, sleazy investigatory tactics alone—unless so offensive that they amount to a violation of due process—do not provide the "clear basis in ... law," *United States v. Chanen,* 549 F.2d 1306, 1313 (9th Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977), required for the exercise of the supervisory power. Unless the law

enforcement officers break the law, the court has no authority to sanction them. *See United States v. Ramirez,* 710 F.2d 535, 541 (9th Cir.1983) (once court determines that officer's conduct didn't exceed bounds of permissible conduct, the inquiry ends); *United States v. Kelly,* 707 F.2d 1460, 1476 (D.C.Cir.) (absent a violation of a constitutional right, court may not exercise supervisory power to dismiss indictment), *cert. denied,* 464 U.S. 908, 104 S.Ct. 264, 78 L.Ed.2d 247 (1983). The supervisory power simply does not give the courts the authority to make up the rules as they go, imposing limits on the executive according to whim or will. *United States v. Myers,* 692 F.2d 823, 847 (2d Cir.1982) (supervisory power does not entitle judges to fashion subconstitutional limitations on the conduct of law enforcement agents), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983); *see Osborn v. Bank of the United States,* 22 U.S. (9 Wheat) 738, 866, 6 L.Ed. 204 (1824) ("Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the legislature."). By penalizing executive conduct that violates neither the Constitution nor a federal statute, the court invaded the domain of the legislature, whose role it is to establish limits on such conduct by law; and it invaded the province of the executive, whose function it is, within legal limits, to decide how to enforce the law. *See Gatto,* 763 F.2d at 1046.[2]

■ Courts may also exercise the supervisory power "to preserve judicial integrity" by ensuring that the jury's decision rests on "appropriate considerations validly before [it]." *Hasting,* 461 U.S. at 505, 103

---

1. The district court did find that the FBI agents filed a deliberately misleading affidavit to establish the necessity of a wiretap, violating 18 U.S.C. § 1518. However, that violation was remedied by the suppression of evidence obtained through the wiretap. The court also took judicial notice that the FBI compelled Karen Eccles, an informant who had testified favorably to the defense at the suppression hearing, to recant her testimony and then prosecuted her for perjury. *See United States v. Eccles,* 850 F.2d 1357 (9th Cir.1988). To the extent her statements were involuntary, however, they too were suppressed. *Id.*

2. Although the supervisory power may be exercised only where there is a violation of federal statutes or the Constitution, the existence of such a violation does not always require or permit its exercise. Sometimes prudence requires us to wait for Congress to act, *Gatto,* 763 F.2d at 1046; and the exercise of the supervisory power must not substitute the judgment of the district court for a controlling decision of the Supreme Court, *United States v. Payner,* 447 U.S. 727, 737, 100 S.Ct. 2439, 2447, 65 L.Ed.2d 468 (1980) (court may not circumvent fourth amendment standing requirement by excluding illegally seized evidence under the supervisory power).

S.Ct. at 1978; *see also Gatto,* 763 F.2d at 1044. Thus, judges exercise substantial discretion over what happens *inside* the courtroom. *See United States v. Schwartz,* 857 F.2d 655, 660 (9th Cir.1988) (Hupp, J., concurring) (in a trial situation the judicial branch should be able to decide what solution is most desirable). Here, however, the judge ensured that no trial would ever take place as punishment for conduct that occurred *outside* the courtroom. The supervisory power comprehends authority for the courts to supervise their own affairs, not the affairs of the other branches; rarely, if ever, will judicial integrity be threatened by conduct outside the courtroom that does not violate a federal statute, the Constitution or a procedural rule. *Gatto,* 763 F.2d at 1046; *United States v. Lau Tung Lam,* 714 F.2d 209, 210 (2d Cir.) (judiciary's supervisory power over prosecutorial activities outside the courtroom is very limited, if it exists at all), *cert. denied,* 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 322 (1983).

▆▆ The supervisory power may also be used to create remedies designed to deter future illegal conduct. *Hasting,* 461 U.S. at 505, 103 S.Ct. at 1978; *Gatto,* 763 F.2d at 1044. Miller, the FBI's informant, did break the law, engaging in prostitution, shoplifting and heroin use throughout the investigation. However, we previously held that Miller's conduct, because it was not encouraged by the FBI, cannot be attributed to the government, *Simpson,* 813 F.2d at 1467, and that the government was under no obligation to stop using her as an informant once it discovered her conduct, *id.* at 1470. Since the court identified no *past* illegal conduct for which the government was responsible,[3] the supervisory power could not be used to deter it from engaging *future* illegal conduct.

### II

▆▆ Even if the court had predicated its exercise of the supervisory power upon a proper legal basis, we would be unable to

approve of the sanction it selected. The doctrine of separation of powers requires judicial respect for the independence of the prosecutor. *See United States v. Sears, Roebuck & Co.,* 719 F.2d 1386, 1391 (9th Cir.1983), *cert. denied,* 465 U.S. 1079, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984). Dismissing an indictment with prejudice encroaches on the prosecutor's charging authority, substituting a judicial wag-of-the-finger for the prosecutorial nod. Such an intrusion will be permitted only in cases of flagrant prosecutorial misconduct. *Id.; United States v. Carrasco,* 786 F.2d 1452, 1455 (9th Cir.1986); *see also United States v. Miller,* 722 F.2d 562, 564 (9th Cir.1983) (prosecutor's charging discretion is almost absolute); *cf. Schwartz,* 857 F.2d at 658–59 (because executive has the right to determine which witnesses it will call, court may not suppress witness out of generalized concern for justice). The conduct here was neither fairly attributable to the prosecutor nor sufficiently flagrant to justify dismissal with prejudice.[4]

### Conclusion

▆▆ In the exercise of the supervisory power, judges must be careful to supervise their own affairs and not those of the other branches. The Constitution empowers the judiciary to thwart the will of the other branches only when their behavior is not in accordance with law; we may not, by exercise of judicial fiat, impose our will upon the coordinate branches.

We reverse the judgment of the district court and remand with instructions that it reinstate the indictment.

D.W. NELSON, Circuit Judge, concurring:

I concur. I wish to emphasize that we are not holding today that a district court may *never* use its supervisory powers absent a statutory or constitutional violation. As Judge Norris pointed out in his dissent in *United States v. Sears, Roebuck & Co., Inc.,* 719 F.2d 1386 (9th Cir.1983), *cert.*

---

**3.** The alleged violation of 18 U.S.C. § 2518 had already been remedied. *See* n. 1, *supra.*

**4.** That the government's conduct is not a proper basis for dismissing the indictment does not, of

course, make it irrelevant to the jury's decision: Defendants may be entitled to put the government's investigatory tactics before the jury in support of a defense such as entrapment.

*denied,* 465 U.S. 1079, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984), supervisory powers are intended to deter governmental misconduct and protect the integrity of the judicial process, while constitutional analysis preserves fairness for the individual defendant. *Id.* at 1394 (Norris, J., dissenting). Dismissal on supervisory powers grounds is based on a combination of the egregiousness of a prosecutor's present misconduct, the need to discipline him for past misconduct, and the effectiveness of any other available sanctions short of dismissal. *Id.* at 1395 (Norris, J., dissenting). Here, the holding in *Simpson I* forecloses our discussion of the first issue, and there has been no evidence of past prosecutorial misconduct. Though there are not other available sanctions, save censure, we still hold that in light of the first two factors, no invocation of the supervisory powers is here warranted.