**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Hector Benjamin BARRERA–MORENO
and Eugene Benjamin Herndon,
Defendants–Appellees.**

**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**William Joseph KUNKEL,
Defendant–Appellee.**

**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Daniel RUIZ, Jr., Defendant–Appellee.**

Nos. 90–10330, 90–10357, 90–10393.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1991.

Decided Dec. 17, 1991.

Joseph Douglas Wilson, U.S. Dept. of Justice, Washington, D.C.; Jerry R. Albert, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellant.

Sean Bruner, Ralls & Bruner, Tucson, Ariz., for defendant-appellee Barrera–Moreno.

Richard B. Jones, Tucson, Ariz., for defendant-appellee Herndon.

John G. Bogart, Tucson, Ariz., for defendant-appellee Kunkel.

Anthony P. Brooklier, Beverly Hills, Cal., for defendant-appellee Ruiz.

Before CANBY and KOZINSKI, Circuit Judges, and NIELSEN, District Judge.*

NIELSEN, District Judge:

In each of these cases, the government appeals from the judgment dismissing the indictments on drug charges against appellees on the ground of outrageous government conduct. A jury convicted Kunkel and Ruiz, but the indictment was dismissed before sentencing. The indictment against Barrera and Herndon was dismissed before trial. We reverse.

## I. BACKGROUND

The issue in the appeals centers on the government's use of a confidential informant instrumental in obtaining the indictments. Evidence at the trial of Ruiz and Kunkel indicated the informant supplied cocaine in ounce lots to Ruiz, with whom the informant had been acquainted since 1987, in exchange for work performed by Ruiz at the informant's business. Ruiz was to sell the cocaine, but instead kept it for his personal use. Sometime in 1989, the informant told Ruiz he could no longer supply cocaine and the two agreed that Ruiz would obtain cocaine in kilo amounts for the informant to sell. Ruiz was to keep two ounces from each kilo as his payment. When the informant failed to pay the person from whom Ruiz obtained the cocaine, Ruiz and Kunkel approached the informant to demand payment. The informant obtained $3000 which he gave to Kunkel. Ruiz and Kunkel were to meet the informant later to deliver another kilo of cocaine and were arrested at that time. Defendants presented an entrapment defense and the court instructed the jury on entrapment.

Ruiz and Kunkel each filed motions to dismiss the indictment because of outrageous government conduct. After the jury returned a guilty verdict, the court questioned the prosecutor on the informant's activity, particularly regarding defense testimony that the informant had

_____

* The Honorable Wm. Fremming Nielsen, United States District Judge, Eastern District of Washington, sitting by designation.

used cocaine with Ruiz on several occasions. The prosecutor stated that it was his understanding that the informant was being tested for cocaine use at least once a week. At the sentencing hearing, the court granted the motion with respect to Ruiz, finding the informant was not being tested during the time of his involvement with the defendants and that testing did not begin until August 1989. The informant was tested 15 times over the course of the next four months and tested positive four times. The court denied the motion with respect to Kunkel because the informant's involvement with Kunkel was less than with Ruiz. Kunkel's sentencing was continued but the court dismissed the indictment against Kunkel in a one-sentence order before the rescheduled sentencing date.

Barrera and Herndon were also indicted as a result of the informant's activities. At a hearing on their motion to dismiss prior to trial, the informant admitted to cocaine use. The court dismissed the indictments in another one-sentence order.

Following these developments, the court issued a Memorandum of Decision constituting its findings and the basis for its dismissal of the indictments. The memorandum applied to all four appellees. The court detailed the chronology of events surrounding the informant's arrests, convictions, and subsequent activities as an informant. The court found the informant and Barrera frequently used cocaine together to the point that Barrera became addicted, that Barrera was hospitalized after the informant gave him some sleeping pills, that an attorney did not inform Barrera of the informant's activity even though he had to be aware of them,[1] and that Barrera supplied the informant with cocaine as payment for a favor in getting unrelated charges against Barrera dropped. The court also found that the informant supplied Ruiz with cocaine for personal use "to the point where [the informant] was at least partially responsible for Ruiz becoming addicted." The memorandum also sum-

marized evidence from the records regarding the informant's use of cocaine.

The memorandum then noted the court's requests for information regarding the informant's use of cocaine and stated that the failure of the prosecutor or other government agents to come forward with explanations after it became apparent that the informant was not being tested during the investigations was a "tacit admission that there were misrepresentations made to the court." The court reiterated concerns it had expressed about the informant's activity in a previous trial and concluded that the government must face the consequences of the informant's conduct.

## II. DISCUSSION

██ A district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. *See e.g., United States v. Simpson,* 813 F.2d 1462, 1464–65 (9th Cir.), *cert. denied,* 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987) *(Simpson I ).* If the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers. These powers may be exercised for three reasons: to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct. *See, e.g., United States v. Simpson,* 927 F.2d 1088, 1090 (9th Cir.1991) *(Simpson II ).*

██ Dismissal of an indictment on due process grounds is reviewed de novo; dismissal based on the court's supervisory powers is reviewed for abuse of discretion. *United States v. Restrepo,* 930 F.2d 705, 712 (9th Cir.1991); *Simpson I,* 813 F.2d at 1465 n. 2. Findings of fact underlying the dismissal are reviewed under the clearly erroneous standard. *Restrepo,* 930 F.2d at 712. The district court did not clearly indicate whether it had concluded the conduct violated due process or if it was exercising

---

1. The government correctly argues that the attorney was not part of the investigation and his actions are irrelevant to any outrageous conduct by the government.

its supervisory powers. We conclude the dismissals were improper under either theory.

## A. Due Process

■ To violate due process, governmental conduct must be " 'so grossly shocking and so outrageous as to violate the universal sense of justice.' " *Restrepo*, 930 F.2d at 712 (citations omitted). Due process is not violated unless the conduct is attributable to and directed by the government. "[P]assive tolerance ... of a private informant's questionable conduct [is] less egregious than the conscious direction of government agents typically present in outrageous conduct challenges." *Simpson I*, 813 F.2d at 1468. Here, the district court stated it was not saying that the government condoned the conduct of the informant, but that the government had notice of the informant's activity and must have been aware of it. Absent evidence and a factual finding of government direction, however, we can conclude only that the government was guilty of "passive tolerance."

■ Even if the government had directed the activities of the informant, the government's conduct must amount to the "engineering and direction of [a] criminal enterprise from start to finish." *United States v. Smith*, 924 F.2d 889, 897 (9th Cir.1991). In *Simpson I*, the court found no due process violation when the government continued to use a known prostitute even after becoming aware she was engaging in sexual activity with the suspect, who was arrested when the prostitute introduced him to FBI agents for a heroin sale. *Simpson I*, 813 F.2d 1462, 1465–71. Other examples of conduct that does not violate due process include supplying the contraband at issue in the investigation, *Hampton v. United States*, 425 U.S. 484, 489, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113 (1976), and introduction of drugs into a prison setting to identify a distribution network, *United States v. Wiley*, 794 F.2d 514, 515 (9th Cir.1986). *See generally Smith*, 924 F.2d at 897 (citing examples, including those listed here, of conduct that does not violate

due process). We find the activities of the informant less egregious than the contested activities in many of the cases noted in *Smith* and thus conclude the government's conduct in permitting this activity and in not monitoring the informant's drug use did not violate due process.

## B. Supervisory Powers

■ Dismissal is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available. For example, a Fourth Amendment violation may properly result in dismissal if the violation is not adequately remedied by application of the exclusionary rule. *Cf. Simpson II*, 927 F.2d at 1090 n. 1 (deliberately misleading affidavit to establish need for wiretap cured by suppression of evidence). As in *Simpson II*, the district court did not identify any statutory or constitutional violation. Thus, remedial or deterrent goals cannot justify dismissal in these cases.

■ We also conclude that concern for the preservation of judicial integrity did not warrant dismissal of the indictments. The district court apparently considered two factors relating to judicial integrity: the government's failure to be aware of and stop the informant's use and distribution of cocaine and the prosecutor's assertion that the informant was being tested at the time of involvement with defendants when in fact he was not. The first of these factors, which we have held did not violate due process, *see supra*, is not relevant to judicial integrity because it occurred outside the courtroom. *See Simpson II*, 927 F.2d at 1091 (supervisory powers used to supervise court's affairs; integrity rarely, if ever, threatened by conduct outside the courtroom). Courts do not have the authority to supervise out-of-court executive procedure in the absence of a constitutional or statutory violation. *Id.* at 1090 (penalizing conduct that does not violate statute or Constitution invades province of legislature, which has the authority to limit conduct by law, and executive, who has authority to decide how to enforce law).

The court made no factual findings that the prosecutor's misrepresentation of drug testing was intentional. On the basis of the factual findings of the court, the prosecutor was at most remiss in not having adequate knowledge of the behavior and supervision of the informant. The conduct thus is not the type of flagrant behavior which could be remedied by the supervisory powers. *See id.* at 1091 (cannot substitute "judicial wag-of-the-finger for the prosecutorial nod;" prosecutor's conduct must be flagrant). Moreover, prosecutorial misconduct must cause substantial prejudice to defendants. *United States v. Jacobs,* 855 F.2d 652, 655 (9th Cir.1988) (conduct must be flagrant *and* prejudicial). Prejudice could not be a factor for Barrera and Herndon who have not yet been tried. At trial, they will be able to make what use they can of the lack of supervision and drug testing. The prosecutor's misrepresentations came after the jury verdict against Kunkel and Ruiz and could not have influenced the jury. Defendants were not prevented from presenting evidence of the informant's drug use.[2]

### III. CONCLUSION

In summary, we conclude that the conduct of the government was not so outrageous as to constitute a due process violation; nor was invocation of the court's supervisory powers proper. The government's tolerance of the informant's activity, the failure of any agency to test the informant for drug use, and the prosecutor's lack of knowledge concerning testing may all be indicative of less than exemplary official performance. None of these facts, however, either in isolation or in concert, warrants the extreme measure of dismissing the indictments. *See Simpson II,* 927 F.2d at 1090 (court rightfully disturbed by conduct, but "sleazy investigatory tactics ... do not provide the 'clear basis in

... law' required for the exercise of the supervisory power") (citation omitted). Accordingly, we reverse the judgments of dismissal and remand to the district court for reinstatement of the indictments.

REVERSED.

2. Ruiz and Kunkel argue on appeal that incomplete knowledge of the informant's activity and lack of testing affected their ability to impeach his testimony and fully develop their defense. Whether the government's haphazard supervision of the informant and failure to test him for drug usage (or even be aware that testing was not performed) affected appellees' right to a fair trial is distinct from the issue of whether the government's conduct was so outrageous that it warranted dismissal of the indictment against them. Our holding is limited to the latter issue and does not preclude a motion after remand for a new trial under Rule 33 of the Federal Rules of Criminal Procedure.