**UNITED STATES of America**

v.

**R. Steven DODGE.**

**No. CR–91–63–18–S.**

United States District Court,
D. New Hampshire.

Aug. 24, 1992.

See also 803 F.Supp. 563, 803 F.Supp. 499, 803 F.Supp. 568.

David Vicinanzo and Clyde R.W. Garrigan, Asst. U.S. Attys., Jeffrey R. Howard, U.S. Atty., Concord, N.H., for U.S.

Alan P. Caplan, San Francisco, Cal., for C. Pasciuti.

Paul J. Garrity, Londonderry, N.H., for R.S. Dodge.

## ORDER

FUSTE, District Judge.

This case is a multi-count criminal prosecution against sixteen remaining defendants, for a continuing criminal enterprise and drug conspiracy. Several firearms violations are also charged. The indictment mentions that defendants, some of whom allegedly belong to the Hells Angels Motorcycle Club, influenced other motorcycle groups and together distributed large quantities of methamphetamine, marijuana, tetrahydrocannabinol (THC), and mescaline, Schedule I or II controlled substances, in New Hampshire and other places. The government claims that the drug business generated substantial profits laundered through legitimate businesses and that drugs were supplied as a reward to loyal conspirators and denied to those failing to

perform as expected. The indictment mentions the use of threats, intimidation, beatings, and other forms of violence in defense of and to protect the drug business, the thwarting of investigative efforts by law enforcement, the threatening of witnesses and jurors, and the possession of weapons to accomplish the above.

Defendant R. Steven Dodge moves the court to dismiss the indictment against him based on alleged prosecutorial misconduct. (Docket Document No. 679). Specifically, he claims that state law enforcement officials, at the behest of the United States Attorney's office, interfered with his right to counsel, to prepare a defense, and to due process. The government filed an opposition. Based on our review of the parties' submissions and for the reasons outlined below, we deny defendant's motion.

## I.

As a result of matters discussed after informal status conferences held June 17 and 18, 1992, and pursuant to a written motion filed on June 25, 1992, Docket Document No. 609, this court granted defendant's motion requesting that we approve the contracting of private investigator James Lennon for purposes of trial preparation pursuant to 18 U.S.C. § 3006A(e)(1). (Docket Document No. 633).

On July 1, 1992, Lennon received a phone call from Frank Kenney, an auxiliary New Hampshire State Trooper. Kenney informed Lennon that one of the persons he was investigating, Kenneth Anderson, was in the Federal Witness Protection Program. Kenney inquired as to why Lennon was looking for Anderson. Lennon responded that he was providing investigative services for attorney Paul Garrity and was not looking for Anderson *per se*, but rather investigating his background. Kenney warned Lennon that if he did anything illegal in his investigation, he would place his investigator's license in jeopardy. Kenney also requested that Lennon speak with state trooper Peter Hilchey. Lennon replied that, prior to speaking with Hilchey, he wished to speak with attorney Garrity.

Kenney responded that Lennon should speak with Hilchey first.

A few minutes later, Lennon received a phone call from Hilchey. Hilchey requested that Lennon meet with him and Trooper Kenney the following day at the United States Attorney's Office in Concord, New Hampshire. Hilchey also warned that Lennon should choose between protecting himself and his license, attorney Garrity or a member of the Hell's Angels. Again, Lennon repeated his wish to contact attorney Garrity prior to any meeting with the troopers so as to avoid any disclosure which might affect the attorney-client privilege between Garrity and Dodge.

The next day, Hilchey again called Lennon requesting a meeting that afternoon. Hilchey explained that the troopers were interested in what Lennon's instructions from attorney Garrity were and whether they were carried out. The officer also questioned the legality of Lennon's investigation. When Lennon asked what would happen if he did not attend the meeting, Hilchey responded that Lennon would be deemed "uncooperative" and the investigation would be carried to the "next step." Lennon again informed the officers of his desire to speak with attorney Garrity. Hilchey replied that it would be better for Lennon to speak with his own attorney.

Lennon then contacted attorney Garrity and explained the substance of his conversations with Hilchey. Lennon next called Hilchey and canceled the tentatively-scheduled meeting. Lennon also consulted with another attorney, Bruce Kenna, to seek independent advice. When Hilchey later called Lennon, the latter informed the officer that if he had any further questions, he should contact attorney Kenna. Hilchey responded that he would pass the information on to the Assistant United States Attorney ("AUSA") handling the case.

In its opposition, the government explained that it had received information from its sources that a "contract" had been put out to kill government witnesses Kenneth and Joanne Anderson and that members of the Hell's Angels were actively searching for them. Their conversations

with Lennon were for the purpose of investigating this angle and ruling out any relation to the threat. According to the government, once satisfied that the investigator's activities posed no threat to the Andersons, no further contact was made.[1]

## II.

■ "Dismissal of an indictment is an extreme remedy, appropriate only in cases of 'serious and blatant prosecutorial misconduct that distorts the integrity of the judicial process.'" *United States v. Font–Ramirez*, 944 F.2d 42, 46 (1st Cir.1991) (quoting *United States v. Giorgi*, 840 F.2d 1022, 1030 (1st Cir.1988)) (quoting *United States v. Ogden*, 703 F.2d 629, 636 (1st Cir.1983)), *cert. denied sub nom Ramirez v. United States*, — U.S. —, 112 S.Ct. 954, 117 L.Ed.2d 122 (1992). "The basic rule is that, because of the constitutionally mandated independence of the grand jury and the prosecutor, courts should be reluctant to dismiss an indictment." *Ogden*, 703 F.2d at 636. The dismissal of an indictment is an infrequent occurrence and is used largely "as a prophylactic tool to discourage further misconduct of a like nature." *Giorgi*, 840 F.2d at 1030. *See also United States v. Houghton*, 554 F.2d 1219, 1224 (1st Cir.), *cert. denied*, 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977). Before dismissing an indictment based on prosecutorial or governmental misconduct in the context of grand jury proceedings, the First Circuit has opined that the misconduct must be sufficiently egregious so as to "deceive", "overreach", or "overbear the will" of the grand jury. *United States v. Rodríguez*, 738 F.2d 13, 16–17 (1st Cir. 1984). Applying these standards to the defendant's claim, we find that the actions complained of do not rise to the level required to apply the remedy of dismissal.

■ First, we note that defendant raises no challenge to the grand jury proceedings leading up to the indictments nor does he challenge the indictment itself. We, therefore, "begin with the premise that an indictment, valid on its face, returned by a legally constituted grand jury, calls for a trial on the merits." *Rodríguez*, 738 F.2d at 16; *United States v. Flaherty*, 668 F.2d 566, 583 (1st Cir.1981). Second, that limits our discussion to the determination whether defendant's allegations are sufficient to warrant dismissal of the indictment under the court's supervisory powers. *See United States v. Hasting*, 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983) (purposes of court's supervisory powers are three-fold: to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and as a remedy to deter illegal conduct); *United States v. Simpson*, 927 F.2d 1088 (9th Cir.1991). We hold that they are not.

■ Accepting defendant's allegations as true for purposes of this motion, he has alleged nothing more than a series of telephone calls between state police officers and Lennon in which the former sought unsuccessfully to obtain information about the latter's investigation. Lennon revealed nothing of substance to the police. The information that he did reveal—that he was working for one of the defendants in the Hell's Angels case—was available in the criminal docket, since the court had authorized payment for Lennon's hiring as an investigator. The "inquiries" into Lennon's investigation did not continue for any significant length of time. We have no reason to disbelieve the government's explanation for their investigation of Lennon

1. On June 17 and 18, 1992, and as a result of several informal status conferences held, counsel for defendant John Courtois indicated his interest in interviewing Kenneth Anderson. Since Anderson was under the Witness Protection Program, the court suggested that the government communicate Courtois' request for an interview to Anderson and Anderson, in turn, would communicate to the government his willingness or unwillingness to meet. The govern-

ment expressed no objection to the interview, as long as the witness consented. *See* Memorandum Order, dated June 22, 1992, Docket Document No. 589. Unfortunately, this matter was not discussed at the status conference held for defendant Dodge's case. Had the court been informed, we would have taken measures to assist within permissible limits and this whole incident could have been avoided.

and there is no dispute that the law enforcement officials, concerned by the alleged "contract" on the life of Anderson, stopped investigating Lennon soon after they learned that he was hired by defense counsel to assist in trial preparation. We, therefore, find defendant's factual allegations insufficient to state a claim for prosecutorial misconduct.

### III.

 Even if we were to find the government guilty of some misconduct in investigating Lennon and motivating fear of legal process in him, the allegations fail to rise to the level of a due process violation, a requirement for this court to exercise its supervisory powers. Lennon is a private investigator. He well knew that his investigation was lawful and had been approved by the court. Lennon had access to counsel for defendant, Paul Garrity. He had the advice of his own independent attorney. Lennon dealt with the situation like a seasoned professional, without hampering his investigative efforts. *See Simpson*, 927 F.2d at 1090. While we agree that the law enforcement officers' use of threatening language with respect to Lennon's professional license and their warning that he himself should seek legal counsel should not be condoned, we can find no basis for the claim that *defendant's* ability to prepare his defense or to receive assistance of counsel was hindered in any significant way.

Finally, with respect to defendant's claim that the government's conduct deprived him of his Sixth Amendment right to the assistance of counsel, defendant has also failed to allege any basis for a finding of prejudice. In *United States v. Morrison*, 449 U.S. 361, 365–66, 101 S.Ct. 665, 668–69, 66 L.Ed.2d 564 (1981), the Court held that, "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation [of defendant's Sixth Amendment right to counsel] may have been deliberate." The basis for the Court's decision was that defendant failed to show any prejudice in her counsel's ability to provide adequate representation. *Id.* at

366, 101 S.Ct. at 669. Likewise, in the matter before us, defendant makes no showing of prejudice.

Based on the above, we deny defendant's motion to dismiss the indictment. We also deny defendant's motion to order a deposition of Kenneth Anderson pursuant to Fed. R.Crim.P. 15.

IT IS SO ORDERED.

