19 F.3d 1441
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ahmad R. BILAL, Defendant-Appellant.
 No. 94-50228.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 9, 1994.*
Decided March 16, 1994.
 
 MEMORANDUM**
 Before: PREGERSON, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.
 
 
 1
 Ahmad Bilal appeals his jury conviction on retrial for conspiracy to distribute and possession with intent to distribute a substance containing cocaine, in violation of 21 U.S.C. Secs. 841(a)(1) and 846. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm.
 
 BACKGROUND
 
 2
 A jury convicted Appellant Bilal for conspiracy to distribute and possession with intent to distribute, a quantity in excess of five kilograms of a substance containing cocaine. We reversed and remanded the case to the district court because it failed to give an entrapment instruction. (ER at 6). On remand, Bilal relied on the defense of entrapment, and the jury again convicted him of the same offenses.
 
 
 3
 The jury heard the following undisputed evidence. In May 1989, Byron Bolton ("Bolton"), an FBI informant, went to the LaShawn Car Wash to find a known drug dealer named John the barber, the subject of an FBI investigation. There, he met Bilal and Alander Smith ("Smith"). Bilal began a conversation about Bolton's Mitsubishi portable phone because he had never seen that particular model before. He expressed an interest in buying one and discussed prices with Bolton. (RT 12/10/92, pp. 129-31). Bolton next asked Bilal if he knew John the barber, prompting Smith to take over the conversation and ask "how many" Bolton had come in for. Bolton replied "eight or nine keys," meaning kilograms of cocaine, and Smith told Bolton that he could "hook him up." (RT 12/8/92, pp. 6-7; RT 12/10/92, pp. 132-33). Bilal and Bolton exchanged phone numbers and agreed to talk again; Bolton indicated that he planned to discuss the drug deal, (RT 12/8/92, pp. 5-8), while Bilal stated that he planned to arrange a meeting on portable phone sales, (RT 12/10/92, p. 134).
 
 
 4
 Bilal and Bolton arranged to meet at Sisters Restaurant with FBI Special Agent Wanda Moore King ("King") and Smith. (RT 12/10/92, p. 134). At the meeting, they first spoke about portable phones and discussed whether Bilal and Smith should consider buying one. (RT 12/9/92, pp. 73-74; RT 12/10/92, p. 139). Bolton then asked Bilal how much he would charge for the cocaine, and Bilal indicated that only Smith could determine that. (RT 12/8/92, p. 10; RT 12/9/92, p. 74). Smith called John the barber and then told King and Bolton to "just wait here and the dope is on the way." Bolton postponed the deal for another time. (RT 12/8/92, pp. 13-15).
 
 
 5
 Thereafter, Bilal and Bolton called each other a few times. Bilal told Bolton that his friend wanted to buy a portable phone, and Bolton sold him one. (RT 12/10/92, p. 43; RT 12/8/92, p. 19). On other occasions, they spoke about arranging a cocaine sale with Smith. Notably, in August 1989, during three recorded phone conversations, Bilal agreed that he and Smith would meet Bolton at the Viscount Hotel to transact a cocaine purchase. (RT 12/8/92, pp. 23-25; RT 12/9/92, pp. 157-61). Bilal and Smith met Bolton at the hotel. Later that day, Drug Enforcement Agents arrested Bilal in his home.
 
 
 6
 Bilal claimed at trial that he was an unwary innocent who was "ensnared" by a dishonest government informant. He presented evidence that he was a law-abiding citizen, (RT 12/10/92, pp. 78-81) (testimony of minister), and a good family man, (RT 12/10/92, pp. 81-94) (testimony of his wife). Bilal testified that he and Bolton did not discuss drugs at the car wash and that he walked away when Bolton and Smith started talking. (RT 12/10/92, pp. 134-35). He said he never asked Bolton whether Bolton wanted to buy the "white" (cocaine). (RT 12/10/92, p. 133). He also testified that he met Bolton at the restaurant to discuss buying portable phones, and there, for the first time heard Bolton and Smith discuss drugs. (RT 12/10/92, pp. 134-40). Bilal stated that he spoke to Bolton several times only to ask about phones. (RT 12/10/92, p. 152). Although Bilal admitted that he knew about the drug deal at the Viscount Hotel, he explained that he went there only because Bolton led him to believe that he could buy portable phones there. (RT 12/10/92, p. 163). Bilal further testified that he brought $2,000 to the hotel to buy six phones and that he left when Bolton arrived without phones. (RT 12/11/92, p. 10; RT 12/10/92, p. 176).
 
 
 7
 In contrast, the government urged the jury to find that Bilal initiated and knowingly participated in the Bolton-Smith drug deal. The jury heard Bolton testify that, at the car wash, Bilal initiated the discussion on drugs by asking if Bolton had come in for the "white." (RT 12/8/92, p. 5). According to Agent King's testimony regarding the meeting at Sisters Restaurant, Bilal and Smith both participated in the drug discussion. (RT 12/9/92, p. 74). Furthermore, Bolton testified that he met with Bilal to negotiate the quantity of cocaine for sale before the recorded phone conversations to set up the hotel meeting. (RT 10/8/92, p. 22). Bolton does not sell portable phones and, according to his testimony, never indicated to Bilal that he had a supply of phones or that he would sell them. (RT 12/8/92, p. 18).
 
 
 8
 At the conclusion of the government's case, Bilal filed a motion for acquittal based on the defense of entrapment and a motion for new trial based on prosecutorial misconduct. The district court denied both motions. Bilal appeals on two grounds: He challenges the district court's denial of his motion for acquittal and contends that the indictment should have been dismissed due to outrageous government conduct.[1]
 
 ANALYSIS
 I. Entrapment
 
 9
 We review de novo the legal determinations whether a verdict may be upset because it is inconsistent with an acquittal. United States v. Hart, 963 F.2d 1278, 1280 (9th Cir.1992). Bilal contends that the undisputed facts establish entrapment as a matter of law. To review "the denial of a motion for acquittal based on entrapment as a matter of law, [we] must view the evidence in the light most favorable to the government, and decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Citro, 842 F.2d 1149, 1151 (9th Cir.), cert. denied, 488 U.S. 866 (1988) (citations omitted).
 
 
 10
 A defense of entrapment has two elements: (1) government inducement of a crime and (2) the absence of predisposition on the part of the defendant. United States v. Skarie, 971 F.2d 317, 320 (9th Cir.1992). First, Bilal has the burden to prove that he was induced to commit the illegal act by government agents. Id. Second, if Bilal satisfies his burden of proof, the burden shifts to the government to prove beyond a reasonable doubt that Bilal was "disposed to commit the criminal act prior to first being approached by Government agents." Id. (quoting Jacobson v. United States, 112 S.Ct. 1535, 1540 (1992).
 
 A. Inducement
 
 11
 To be entitled to acquittal as a matter of law, Bilal must point to "undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act" by government agents. Hart, 963 F.2d at 1283. We conclude that Bilal failed to present undisputed evidence of government inducement. He presented evidence that he was a law-abiding citizen who only wanted to buy portable phones from Bolton and never even discussed drugs. However, the government's evidence showed that Bilal initiated the conversation on drugs by asking if Bolton had come in for the "white." The government's evidence also showed that Bilal arranged and participated in several meetings to set up the drug deal, not just to talk about portable phone sales. Therefore, Bilal did not undisputedly prove that Bolton initiated the drug sale or that Bolton pressured and threatened him in any way. These facts alone preclude a finding of entrapment as a matter of law. Cf. Skarie, 971 F.2d at 320 (finding inducement where the government initiated the idea of the drug sale, pressured the defendant repeatedly to agree to the plan, and threatened the defendant in order to convince her to sell drugs).
 
 B. Absence of Predisposition
 
 12
 Even if we concluded that Bilal met his burden of establishing inducement, we still would find that Bilal's entrapment defense fails because the government proved beyond a reasonable doubt that he was predisposed to commit the drug crimes prior to first being approached by Bolton. To assess predisposition, we focus on five factors: (1) the character of the defendant, (2) who first suggested the criminal activity, (3) whether the defendant engaged in the activity for profit, (4) whether the defendant demonstrated reluctance, and (5) the nature of the government's inducement. Skarie, 971 F.2d at 320.
 
 
 13
 Only the first factor, the defendant's character, cuts in Bilal's favor. He had no criminal record. Two defense witnesses testified that Bilal was a law-abiding citizen and a family man prior to getting involved with Bolton.
 
 
 14
 Viewing the evidence in the light most favorable to the government (as we must to review the denial of a motion for acquittal), the other factors all cut in favor of the government. For the second factor, who first suggested the crime, we accept the government's evidence that Bilal approached Bolton and asked if he had come in for the "white." Similarly, for the third factor, whether the defendant engaged in the crime for profit, we conclude that Bilal intended to profit from the lucrative drug deal even though he consistently maintained that he arranged the drug deal solely for the purpose of buying cellular phones.
 
 
 15
 The fourth factor, which is the most important one, focuses on whether Bilal demonstrated reluctance that was overcome by the government's inducement. Id. There was very little evidence that Bilal was reluctant to sell drugs prior to being approached by Bolton. There was only Bilal's testimony that he did not discuss drugs with Bolton at the car wash and that he walked away when Bolton and Smith started talking. In contrast, there was ample evidence that Bilal actually pursued the drug deal: Bolton testified that Bilal initiated their car wash conversation about selling cocaine; Agent King testified that Bilal actively participated in the restaurant conversation and in fact did most of the talking because Smith was busy making phone calls. This is not a case involving a reluctant defendant.[2]
 
 
 16
 Finally, there was nothing outrageous about the nature of the (assumed) government inducement. Bolton did not repeatedly request that Bilal supply him with cocaine. Nor did he threaten or coerce Bilal. Cf. Skarie, 971 F.2d at 321 (finding improper inducement where the defendant "refused to participate for over two months in the face of repeated requests by the government, and relented only after the government's agent made a number of graphic and violent threats against her and her family").
 
 
 17
 On balance, considering all of the factors, we conclude that there was sufficient evidence to prove beyond a reasonable doubt that Bilal was predisposed to sell drugs prior to coming into contact with Bolton. See Citro, 842 F.2d at 1152 (finding substantial evidence of predisposition and affirming denial of motion for acquittal where defendant did not initiate the idea of the crime but agreed to participate after being induced by money and two expensive dinners).
 
 II. Outrageous Government Conduct
 
 18
 Bilal claims that the district court erred by not dismissing the indictment against him. He contends that Bolton's conduct was so outrageous as to deprive him of due process. When a defendant raises an issue on appeal that was not raised before the district judge, we review for plain error. See Fed.R.Crim.P. 52(b); United States v. Dischner, 974 F.2d 1502, 1514 (9th Cir.1992), cert. denied, 113 S.Ct. 1290 (1993). "A plain error is a highly prejudicial error affecting substantial rights." United States v. Yarbrough, 852 F.2d 1522, 1537 (9th Cir.), cert. denied, 488 U.S. 866 (1988).
 
 
 19
 Bilal claims that Bolton "ensnared" him into appearing like Smith's accomplice by promising to sell him portable phones. Due process is violated when there is government conduct that is "so grossly shocking and so outrageous as to violate the universal sense of justice." Hart, 963 F.2d at 1284 (quoting United States v. Barrera-Moreno, 951 F.2d 1089, 1092 (9th Cir.1991), cert. denied, 113 S.Ct. 417 (1992). Bolton's activities do not rise to this level. Bilal testified that he met Bolton at the Viscount Hotel because he was led to believe he could buy portable phones there. However, in the recorded phone conversations between Bilal and Bolton, there was no mention of phones or anything that would lead Bilal to believe that he could buy phones at the hotel. Bolton sold Bilal's friend a phone on one occasion, but Bolton testified that he never indicated to Bilal that he had a supply of phones or that he would sell them.
 
 
 20
 Even if the evidence supported Bilal's claim, his argument would still fail. Outrageous government conduct occurs when government agents use physical or psychological force, or the agents "engineer and direct the criminal enterprise from start to finish." United States v. Bonanno, 852 F.2d 434, 437 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989) (finding no substantial government participation where the agent did not devise a plan for factoring fraudulent purchase orders). See Citro, 842 F.2d at 1153 (finding no substantial government participation where agents supplied all the counterfeit credit cards, initially raised the idea of a counterfeit credit card scheme, and offered defendant money for each fraudulent transaction). In this case, there is no evidence of physical or mental coercion. Furthermore, there is no evidence that Bolton devised a plan for selling drugs.
 
 
 21
 We reverse convictions due to outrageous government conduct in only rare instances. For example, in Green v. United States, 454 F.2d 783 (9th Cir.1971), we found unacceptable government conduct where the agent pressured the defendant to produce bootleg alcohol and substantially participated in bootlegging activities (which lasted for three and one-half years after the initial contact) by supplying the necessary materials and equipment. We held that the government "became enmeshed in criminal activity from beginning to end." Id. at 787. By contrast, in this case there is no evidence that Bolton pressured Bilal or that he created and maintained a drug enterprise. Therefore, the district court did not err by not dismissing the indictment against Bilal; there was no outrageous government conduct here.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Bilal does not appeal the denial of his motion for a new trial. In the motion, Bilal claimed he was entitled to a new trial due to prosecutorial misconduct during cross-examination and closing arguments
 
 
 [2]
 Sorrells v. United States, 287 U.S. 435 (1932), cited by Bilal, is distinguishable. There, a government agent, representing himself to be a fellow soldier in the World War, befriended the defendant and "lured [him into buying alcohol] ... by repeated and persistent solicitation in which he succeeded by taking advantage of the sentiment aroused by reminiscences of their experiences as companions in arms in the World War." Id. at 441 (holding only that the defense of entrapment was available to the defendant, not that he was entrapped). In this case, Bolton did not repeatedly and persistently solicit Bilal. Bolton neither appealed to Bilal's emotions nor attempted to take advantage of him in any way. And, the nature of Bolton's contacts with Bilal were more business-like than personal