983 F.2d 1080
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alfred L. WILLIAMS, Defendant-Appellant.
 No. 92-30048.
 United States Court of Appeals, Ninth Circuit.
 Argued Nov. 6, 1992.
Decided Jan. 6, 1993.
 
 1
 Before HUG, and POOLE, Circuit Judges, and PRO, District Judge.*
 
 
 2
 MEMORANDUM**
 
 FACTS
 
 3
 In late 1990, Detective Raj Johal ("Johal") of the Bellvue, Washington, Police Department, met with an informant. This informant told Johal that Appellant, Alfred Williams ("Williams"), would be interested in making drug deals, and introduced Johal, working in an undercover capacity, to Williams.
 
 
 4
 At their first meeting, Johal and Williams discussed the sale of cocaine, and Williams expressed his desire to purchase cocaine from Johal. Subsequent contacts and meetings ensued, all with the purpose of furthering Williams' goal of buying and/or selling cocaine. Both parties initiated these contacts and meetings. Often, Williams would call Johal, and not being able to reach him, would leave a message. Johal would then return the message, and a meeting would be arranged.
 
 
 5
 According to the testimony of Johal, Williams sold crack cocaine to Johal and to various undercover officers at different times during their contacts. During their conversations, Johal and Williams agreed on a plan in which Williams' cousin, Robert Willis, owner of a Ford car dealership, would give Johal a van in exchange for one kilogram of cocaine. The plan then called for Williams to sell the cocaine and pay Willis for the cost of the van.
 
 
 6
 On June 26, 1991, Johal and Williams executed the plan. After giving Williams a kilogram of cocaine, and after making sure that he would be able to go pick up the van at Willis' dealership, Johal and other undercover officers arrested Williams in Williams' van. Upon searching the van, the police recovered the kilogram of cocaine that had been provided by Johal, and a second kilogram of cocaine that Williams had in his possession.
 
 
 7
 Defendant-Appellant Williams was indicted on three counts of possession with intent to distribute cocaine. Count one charged the defendant with conspiracy to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. 846; counts 2 and 3 charged him with possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(B). On January 31, 1992, a jury convicted Williams on all three counts. The trial judge sentenced Williams to 150 months in prison on Count I, and to a total of 150 months on Counts II and III. The sentences as to all three counts are to be served concurrently.
 
 
 8
 Williams challenges both his conviction and his sentence. In challenging his conviction, he asserts that the trial judge should have dismissed the Indictment because he was the victim of entrapment, and that the trial judge's failure to instruct the jury on entrapment constituted reversible error. He also contends that his conviction should be reversed because the government's investigation constituted outrageous conduct as a matter of law.
 
 
 9
 Williams asserts two additional grounds in challenging his sentence. He argues that it was error for the trial judge to refuse to allow Williams to determine the exact amount of cocaine involved in his case for purposes of calculating the sentencing range under the United States Sentencing Guidelines. Williams further claims that the district judge abused his discretion when he increased Williams' offense level by two points for obstruction of justice, based on the judge's finding that Williams gave false testimony at trial.
 
 DISCUSSION
 I. Entrapment
 
 10
 Although it is unclear from the record, Williams apparently requested that the jury receive an instruction regarding entrapment. After waiting until all the testimony had been taken, the judge noted that he did not believe that the evidence warranted an entrapment instruction. Williams' attorney declined an opportunity to argue the issue further, and instead withdrew his request for the entrapment instruction.
 
 
 11
 Williams now claims that the district court violated his Fifth Amendment right to Due Process, or, alternatively, his Sixth Amendment right to a fair trial, by its refusal to instruct the jury on an entrapment defense. He asks this Court to grant him a new trial.
 
 
 12
 This Court will grant a motion for a new trial based on a claim of entrapment only in exceptional circumstances where the evidence weighs heavily against the verdict. See United States v. Citro, 842 F.2d 1149, 1151 (9th Cir.), cert. denied, Citro v. United States, 488 U.S. 866 (1988) (citing Hsieh Hui Mei Chen, 754 F.2d 817, 821 (9th Cir.), cert. denied, 471 U.S. 1139 (1985)). Ordinarily, this Court reviews a denial of a motion for a new trial based on the defense of entrapment under an abuse of discretion standard. Citro, 842 F.2d at 1151. In this case, however, Williams withdrew his request for the entrapment instruction. Both sides agree that because there was no objection at trial, the proper standard of review is "plain error." United States v. Bustillo, 789 F.2d 1364, 1367 (9th Cir.1986). "A plain error is a highly prejudicial error affecting substantial rights," and will be the basis for a reversal of a criminal conviction only when "it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." Bustillo, 789 F.2d at 1367 (citing United States v. Giese, 597 F.2d 1170, 1199 (9th Cir.), cert. denied, 444 U.S. 979 (1979)).
 
 
 13
 No error in this case resulted from a failure to instruct the jury on the defense of entrapment. Entrapment is an affirmative defense that must be raised by the defendant. See Matthews v. United States, 485 U.S. 58, 63 (1987); United States v. Menesses, 962 F.2d 420, 428, 429 (5th Cir.1992); United States v. Smith, 924 F.2d 889 (9th Cir.1991). In order to be entitled to an instruction on entrapment, a defendant must present "some evidence that the conduct of the government created a substantial risk that an offense would be committed by a person other than one ready to commit it." Menesses, 962 F.2d at 429. When asserting a defense of entrapment, the defendant must produce evidence (1) that the government induced him to commit the crime, and (2) that he did not have a predisposition to commit the crime.[1] United States v. Smith, 924 F.2d 889, 898 (9th Cir.1991) (citing United States v. Busby, 780 F.2d 804 806-07 (9th Cir.1986)); see also Matthews, 485 U.S. at 63. If the defendant meets this prima facie requirement, the burden shifts to the government to prove beyond a reasonable doubt that it did not induce the defendant to commit the crime,[2] and that the defendant had a predisposition to commit the crime. See United States v. Sullivan, 919 F.2d 1403, 1418 n. 18 (10th Cir.1990); see generally United States v. Skarie, 971 F.2d 317 (9th Cir.1992) (noting that "to be entitled to acquittal as a matter of law, [a defendant] must point to undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act," and that once a defendant puts forth this evidence, the government must prove predisposition beyond a reasonable doubt); United States v. Simtob, 901 F.2d 799 (9th Cir.1990) (trial judge first found sufficient evidence of inducement to warrant an instruction to the jury on entrapment, then instructed the jury that the government had the burden to prove predisposition or lack of inducement).
 
 
 14
 In the instant case, Williams failed to meet his prima facie burden. Here, government agents offered Williams the opportunity to buy and/or sell drugs. Where the government merely affords opportunities or facilities to enable the defendant to commit a crime, this does not rise to the level of inducement, and will not warrant an entrapment instruction. Jacobson v. United States, 112 S.Ct. 1535, 1540 (1992); Matthews, 485 U.S. at 66. The Jacobson Court noted that
 
 
 15
 an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs, and, if the offer is accepted, make an arrest on the spot or later. In such a typical case, or in a more elaborate 'sting' operation involving government-sponsored fencing where the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition.
 
 
 16
 Jacobson, 112 S.Ct. at 1541 (citing United States v. Sherman, 200 F.2d 880, 882 (2d Cir.1952)).
 
 
 17
 Even if this Court were to accept Williams' contention that the government agents initiated contact with him twenty-six times in an attempt to persuade him to buy or sell drugs[3], this still would not bring this case close to the facts in Jacobson. In Jacobson, the Court made it clear that it thought Jacobson was an unwilling participant in the crime, a person whose curiosity was finally piqued after repeated and numerous attempts to entice him into ordering child pornography. Here, the record clearly reflects that Williams needed no such persuasion. Williams initiated contact with the government many times. He often bragged about his prior involvement with drugs. Finally, when the government agents arrested Williams, they found a kilogram of cocaine that he had obtained outside of the government sting operation. This is strong evidence of prior disposition and lack of inducement.
 
 
 18
 The trial court correctly found that Williams had not met his prima facie burden of showing inducement and lack of predisposition and thus was not entitled to an instruction on entrapment. Even if this Court concluded Williams was entitled to an entrapment instruction, however, the trial court's failure to give it cannot be characterized as "plain error." Therefore, we affirm the district court on this issue.
 
 II. Outrageous Government Conduct
 
 19
 Williams asks this Court to reverse the district court's denial of his motion to dismiss the Indictment because of outrageous governmental conduct on two grounds. First, Williams asserts that the refusal to grant his motion to dismiss based on outrageous governmental conduct violated his Fifth Amendment Due Process rights. Second, he asserts that the district court should have used its inherent supervisory power to reverse his conviction and dismiss the Indictment.
 
 
 20
 Williams contends that the undercover officers in this case used "constitutionally prohibited mental coercion" to procure his participation in the crimes committed. In support of this contention, Williams states that the police officers contacted him on twenty-six separate occasions in their efforts to get him to buy or sell drugs. Additionally, Williams claims that the officers "used the Defendant's personal grief over the loss of his mother" to mentally coerce him into participating in drug transactions. He claims that the police "fabricated the entire scheme to buy or sell drugs, and when the Defendant refused to initially participate, they mentally coerced" him rather than lose the time and money already expended in their case.
 
 
 21
 This court reviews de novo a denial of a motion to dismiss an indictment based on due process grounds, United States v. Williams, 791 F.2d 1383 (9th Cir.), cert. denied, 479 U.S. 869 (1986); and reviews a denial based on the district court's refusal to exercise its supervisory power under an abuse of discretion standard. United States v. Barrera-Moreno, 951 F.2d 1089, 1091 (9th Cir.1991) (citing United States v. Simpson, 813 F.2d 1462, 1465 n. 2 (9th Cir.), cert. denied, 484 U.S. 898 (1986)).
 
 
 22
 A. Outrageous Conduct as a Denial of Due Process
 
 
 23
 A motion to dismiss based on outrageous government conduct as a denial of Due Process will be granted only where the government's conduct "is so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Ryan, 548 F.2d 782, 789 (9th Cir.1976), cert. denied, 430 U.S. 965 (1977); see also Restrepo, 930 F.2d at 712; Citro, 842 F.2d at 1152; United States v. O'Connor, 737 F.2d 814, 817 (9th Cir.1984), cert. denied, 469 U.S. 1218 (1985); United States v. Ramirez, 710 F.2d 535, 539 (9th Cir.1983). "The police conduct must be 'repugnant to the American system of justice'." United States v. Smith, 924 F.2d 889, 897 (9th Cir.1991) (quoting Shaw v. Winters, 796 F.2d 1124, 1125 (9th Cir.1986), cert. denied, 481 U.S. 1015 (1987) (quoting United States v. Lomas, 706 F.2d 886, 891 (9th Cir.1983), cert. denied, 464 U.S. 1047 (1984))).
 
 
 24
 Courts have upheld the following law enforcement activities:[4] use of false identities by undercover police officers, Shaw, 796 F.2d at 1125, and United States v. Marcello, 731 F.2d 1354, 1357 (9th Cir.1984); the supply of contraband at issue in the offense, Hampton v. United States, 425 U.S. 484, 489 (1976); the commission of equally serious offenses by an undercover agent during the investigation, United States v. Stenberg, 803 F.2d 422, 430 (9th Cir.1986), superseded by statute on other grounds as stated in United States v. Atkinson, 966 F.2d 1270 (9th Cir.1992); the introduction of drugs into a prison, United States v. Wiley, 794 F.2d 514, 515 (9th Cir.1986); assisting prisoner escape attempts, Williams, 793 F.2d at 1383; use of a drug-using prostitute whose own activities were under investigation and who engaged in regular sexual intercourse with the defendant, United States v. Simpson, 813 F.2d 1462, 1465-71 (9th Cir.), cert. denied, 484 U.S. 898 (1987).
 
 
 25
 It is obvious that, when compared with some of the activities previously found by this Court to be acceptable under the Due Process standard, the law enforcement activities in this case do not constitute a violation of Williams' Due Process rights. Williams' only allegation of wrongful government conduct is his claim that the government used his personal grief over the loss of his mother to coerce him into participating in a drug transaction, although he never explains how the government did so. This argument is more appropriately applied to the inducement prong in the defense of entrapment than to the claim of outrageous government conduct. Thus, this Court holds as a matter of law that the government's conduct in this case did not constitute a Due Process violation. See Smith, 924 F.2d at 897 (affirming the trial court's denial of defendant's motion to dismiss based on outrageous government conduct, where the defendant contended that the government agent "exploited his vulnerability and emotional dependence ...").
 
 B. Supervisory Powers
 
 26
 Williams alleges the district court's refusal to use its supervisory power to dismiss the Indictment was error. If government conduct does not rise to the level of a Due Process violation, a district court may nonetheless choose to exercise its supervisory powers to dismiss an indictment due to outrageous government conduct. Barrera-Moreno, 951 F.2d at 1091. A court may exercise its supervisory powers for three reasons: "to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct." Id. (citing United States v. Simpson, 927 F.2d 1088, 1090 (9th Cir.1991)).
 
 
 27
 The district court did not abuse its discretion when it refused to use its supervisory powers to dismiss Williams' Indictment. None of the three factors for dismissing an indictment under a court's supervisory power are present in the case at bar. This Court has already discussed and disposed of Williams' constitutional claim. Williams alleges no statutory violations. Finally, Williams does not argue, nor does the evidence demonstrate, that judicial integrity or deterrence of future illegal conduct is implicated by the facts of this case. Therefore, the district court correctly denied Williams' motion to dismiss the indictment.
 
 
 28
 III. Pre-sentence Hearing to Resolve Questions of the Weight
 
 
 29
 of the Cocaine
 
 
 30
 Williams asserts that the district court violated his Sixth Amendment Confrontation Clause rights, as well as his Fifth Amendment Due Process rights, when it denied his request to hold a hearing to determine the exact amount of cocaine involved in this case.[5] At the sentencing, the district court adopted the weight specified in the presentence report. The officer who wrote the presentence report relied on the weight as determined by the laboratory that analyzed the cocaine.
 
 
 31
 Testimony at trial established that the chemist who analyzed the cocaine weighed each package, including the wrapping which held the cocaine, and subtracted the estimated weight of the wrapping to arrive at the figure that represented the net weight of the cocaine. The chemist stated that she estimated the weight of the packaging based on her knowledge and experience in weighing similar packaging in past cases, and subtracted this estimated figure from the total figure to arrive at a net weight of 2,017 grams (2.017 kilograms) of cocaine. The chemist testified further that she did not remove and weigh all of the cocaine because the agency that submitted the cocaine to her for analysis requested that she disturb the packaging as little as possible.
 
 
 32
 The United States Sentencing Guidelines use the weight of controlled substances as one important factor in setting the range of sentences. In this case, the sentencing range available for Williams if the weight of the cocaine exceeded 2.0 kilograms is 108-135 months, whereas the available range if the cocaine weighed less than 2.0 kilograms is 87-108 months. The estimated weight of the cocaine as found by the district court in this case was 2,017 grams. That is only 17 grams above the cut-off for imposing the lower sentencing range.
 
 
 33
 This Court has consistently held that a defendant has a due process right to be sentenced on the basis of accurate information material to that sentencing. United States v. Rigby, 896 F.2d 392, 394 (9th Cir.1990); United States v. Doe, 655 F.2d 920, 927 (9th Cir.1980). The district court's denial of Williams' motions to determine the precise weight of the cocaine upon which his sentence under the Sentencing Guidelines was based denied Williams his due process right to a fair sentencing procedure. Rigby, 896 F.2d at 394. Therefore, this case must be remanded to the district court for a determination as to the exact weight of the cocaine that provides the basis for the applicable sentencing range under the Sentencing Guidelines.
 
 IV. Obstruction of Justice
 
 34
 Williams further asserts that the district court erred when it increased Williams' Sentencing Guidelines offense level by two points pursuant to United States Sentencing Guidelines Section 3C1.1 based on its finding that Williams obstructed justice by testifying untruthfully. Williams acknowledges that obstruction of justice by false testimony is a factor contemplated by the Sentencing Guidelines. He argues, however, that contrary to the command of case law, the district judge "made no findings to support his belief [that] the defendant obstructed justice by falsely testifying at trial, and did not create a record as to the reasons for the upward departure."
 
 
 35
 Section 3C1.1 of the Sentencing Guidelines permits an upward adjustment of a defendant's base sentence level by two points if the district court finds the defendant has obstructed justice. A district court's finding that a defendant obstructed justice is a factual conclusion that is reviewed for clear error. United States v. Mondello, 927 F.2d 1463, 1465 (9th Cir.1991). The application notes to this section state that false testimony is considered to be one type of obstruction. This Court has held that the application notes to the Guidelines are to be given considerable weight. United States v. Anderson, 942 F.2d 606, 612 (9th Cir.1991) (en banc).
 
 
 36
 Williams erroneously asserts that the district judge "departed" from the guidelines in making a 2 level adjustment under USSG § 3C1.1. Williams relies on United States v. Ward, 914 F.2d 1340 (9th Cir.1990), to support his proposition that the Sentencing Guidelines do not permit a district court to depart upwards based upon a defendant's obstruction of justice unless the perjury is "significantly more egregious than the ordinary cases of obstruction listed in the application notes to [USSG] § 3C1.1." Appellant's Brief, at 22 (citing Ward, 914 F.2d at 1348). Williams urges this Court to use the two-step process of analysis set out in Ward for reviewing a district judge's upward departure from the sentencing guidelines.
 
 
 37
 Williams fails to recognize that in Ward, the district judge had already adjusted the defendant's base offense level upwards by two points in accordance with USSG § 3C1.1, because he found defendant's false testimony to be an obstruction of justice. The judge then departed upwards from the sentencing table, and used the same false testimony as a factor supporting an upward departure. In effect, the judge in Ward took the defendant's false testimony into account twice when determining the sentence. Ward appealed on the grounds that his false testimony did not provide grounds for the upward departure. Ward did not appeal the judge's upward adjustment of the base offense level for giving false testimony.
 
 
 38
 In this case, the district court took Williams' false testimony into account only once, when it adjusted Williams' base offense level upward by two points for obstruction of justice under USSG § 3C1.1. The judge did not depart from the applicable Sentencing Guidelines. Therefore, we find that the district court acted in accordance with USSG § 3C1.1 when he adjusted defendant's base offense level upwards by two points because he found that defendant testified falsely.
 
 CONCLUSION
 
 39
 The conviction of appellant is AFFIRMED. The sentence is VACATED, and the case is REMANDED to the district court for resentencing.
 
 
 
 *
 The Honorable Philip Pro, United States District Judge for the District of Nevada, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 "If a defendant is predisposed to commit a crime, an entrapment defense is unavailable, regardless of the inducement." Smith, 924 F.2d at 898 (citing Hampton v. United States, 425 U.S. 484, 488-89 (1976); United States v. Moncini, 882 F.2d 401, 406 (9th Cir.1989))
 
 
 [2]
 The following factors, cited by this Court in Smith, 924 F.2d at 898, are proper considerations in determining predisposition:
 (1) The defendant's character and reputation, including prior criminal record;
 (2) "[w]hether the suggestion of the criminal activity was initially made by the government (less important);
 (3) whether the defendant engaged in the criminal activity for profit;
 (4) whether the defendant evidence reluctance to commit the offense, overcome only by repeated government inducement or persuasion (most important); and
 (5) the nature of the inducement or persuasion supplied by the government."
 Smith, 924 F.2d at 898 (citing United States v. Smith, 802 F.2d 1119, 1124-25 (9th Cir.1986); Busby, 780 F.2d at 807; United States v. Reynoso-Ulloa, 548 F.2d 1329, 1336 (9th Cir.1977), cert. denied, 436 U.S. 926 (1978)).
 
 
 [3]
 The defendant supports his claim that he was induced to commit these crimes by stating that law enforcement officials contacted him twenty-six times in an attempt to get him to buy or sell drugs. The government disputes this by noting that many of the contacts to which defendant refers were contacts the defendant himself initiated, but which required the government agent to return the defendant's phone call
 Furthermore, the record reflects testimony that some of the contacts between the government and defendant were for the practical purpose of arranging the details of the drug transactions. This is different from the facts in Jacobson, where almost every contact that took place over the 26 months was an independent offer from the government to get Jacobson to get involved with child pornography.
 
 
 [4]
 This compilation is taken from Smith, 924 F.2d at 897
 
 
 [5]
 We consider only the Due Process argument here, as rights under the Confrontation Clause are not triggered by physical evidence, only by "witnesses." See United States v. Herndon, 536 F.2d 1027, 1029 (5th Cir.1976). Note also that Williams' Confrontation Clause rights were satisfied in that his counsel took advantage of the opportunity to question the chemist who, in this case, made the weight estimates. Cross examination revealed the process for calibrating the scale which the chemist used, the method by which the chemist estimated the weight of the substances, and the fact that the scale had a margin of error of plus or minus one gram