UNITED STATES of America,
Plaintiff–Appellant,

v.

Dirk Francis JENNINGS, John Daniel
Cornwell, Jr., Defendants–
Appellees.

UNITED STATES of America,
Plaintiff–Appellant,

v.

Jason Coler NICHOLS, Jose Luis
Casas, Angela Mary Casas,
Defendants–Appellees.

Nos. 91–50665, 91–50687.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1992.*

Decided April 7, 1992.

John R. Kraemer, Asst. U.S. Atty., San
Diego, Cal., for plaintiff-appellant U.S.

Eugene G. Iredale, San Diego, Cal., for
defendant-appellee Dirk Francis Jennings.

---

* The panel finds *United States v. Nichols* appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

Daniel Casillas, Mathews, Bergen & Grier, San Diego, Cal., for defendant-appellee John Daniel Cornwell, Jr.

Roy C. Stone, Escondido, Cal., for defendant-appellee Angela Mary Casas.

Karen M. Stevens, San Diego, Cal., for defendant-appellee Jose Luis Casas.

Nancee S. Schwartz, San Diego, Cal., for defendant-appellee Jason Coler Nichols.

Before: POOLE, LEAVY and TROTT, Circuit Judges.

POOLE, Circuit Judge:

In *United States v. Henthorn*, 931 F.2d 29 (9th Cir.1991), we held that the government has a duty to examine the personnel files of law enforcement officers it intends to call as witnesses if a defendant requests production of the files. In these cases we consider whether *Henthorn* requires an Assistant United States Attorney ("AUSA") assigned to a case *personally* to review law enforcement officer personnel files. The district court concluded that *Henthorn* mandated such a personal effort, and ordered accordingly. We have jurisdiction pursuant to 18 U.S.C. § 3731,[1] and we reverse.

### I.

These expedited appeals arise from orders suppressing the testimony of government law enforcement agents in two criminal cases.

#### A. *United States v. Jennings*

Defendants Dirk Francis Jennings and John Daniel Cornwell, Jr., were indicted by a grand jury for the Southern District of California on August 3, 1990 on four counts of conspiracy to import a controlled substance, 21 U.S.C. § 952; importation of narcotics, 21 U.S.C. §§ 960, 963; conspiracy to possess with intent to distribute a controlled substance, 18 U.S.C. §§ 841(a)(1), 846; and aiding and abetting a felony, 18 U.S.C. § 2. On September 10, 1990 Cornwell's attorney filed motions for discovery and to suppress evidence, and Jennings' counsel followed with similar motions, including one asking for an order requiring the AUSA prosecuting the case to personally review the personnel files of all law enforcement officers expected to testify at trial. The government opposed these motions.

Relying on its supervisory power, the district court on August 12, 1991 granted Jennings' motion and required the prosecutor to undertake a personal review of agent personnel files. After the government moved for reconsideration, the court held an evidentiary hearing and subsequently modified its order to eliminate a requirement that the AUSA review the files of local and state law enforcement officers. However, the court declined to modify the requirement that the AUSA personally review the files of federal law enforcement agents; the court did limit the provision's scope by authorizing the AUSA to review photocopies of the "non-biographical" portions of the personnel files. On October 29, 1991 the government informed the court that it would decline to follow this order and would appeal. The district court then granted the joint request of the government and defense counsel to suppress the testimony of federal law enforcement witnesses for which no personal file review would occur. The government filed its timely notice of appeal on October 30, 1991.

#### B. *United States v. Nichols*

A grand jury for the Southern District of California issued a four-count indictment

---

**1.** 18 U.S.C. § 3731 provides in relevant part: An appeal by the United States shall lie to a court of appeals from a decision or order of a district court[ ] suppressing or excluding evidence ... not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

against defendants Vickie Lee Santo,[2] Jason Coler Nichols, Jose Luis Casas, and Angela Mary Casas. The indictments charged the defendants with conspiracy to possess a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1); and aiding and abetting a felony, 18 U.S.C. § 2.

Counsel for defendant Jose Casas moved for "access" to the personnel file of a Drug Enforcement Administration special agent in order to review it for materials that could be used to impeach the agent on the witness stand. The government opposed the motion and asserted in its response memorandum that it would undertake the review of the file. On September 4, 1991 the district court, again relying on its supervisory power, ordered the AUSA assigned to the case to personally review the personnel files of all federal agents expected to be called to testify. The government moved for reconsideration on September 13, 1991, and the court modified its order to eliminate any requirement that the AUSA review the files of state and local law enforcement witnesses on October 5, 1991. The court also exempted "biographical" information from the review order and permitted the AUSA to examine photocopies of the file materials. The government notified the district court that it would decline to comply with the modified order on November 4, 1991. Two days later the district court ordered the testimony of twelve federal law enforcement officers suppressed, and on November 7, 1991 the government filed its timely notice of appeal.

### II.

The government argues that we should review de novo the question whether the district court had any legal basis for its discovery order. The defendants, on the other hand, assert that our review is limited to an inquiry into whether the district judge abused his discretion in controlling discovery.

■ We resolved this argument in *United States v. Schwartz,* 857 F.2d 655

(9th Cir.1988). We review de novo the question whether the district court had any legal basis for its discovery order. If it did, we review for an abuse of discretion the court's choice of a sanction for a violation of its order. *Id.* at 657–58.

### III.

#### A.

■ Under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), a defendant has a right to the production of exculpatory evidence in the possession of the government. This right, protected by the Due Process Clause of the Fifth and Fourteenth Amendments, requires the government to turn over any information about its witnesses that could cast doubt upon their credibility. See *United States v. Bagley,* 473 U.S. 667, 676–77, 105 S.Ct. 3375, 3380–81, 87 L.Ed.2d 481 (1985); *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). We have held that *Brady* requires the government to examine the personnel files of its law enforcement officer witnesses for such material. *Henthorn,* 931 F.2d at 30; *United States v. Cadet,* 727 F.2d 1453, 1467 (9th Cir.1984).

■ There is no question that the AUSA prosecuting a case is responsible for compliance with the dictates of *Brady* and its progeny. *Cadet,* 727 F.2d at 1467 ("The prosecutor's oath of office, not the command of a federal court, should have compelled the government to produce any favorable evidence in the personnel records."). See *Bagley,* 473 U.S. at 675 n. 6, 105 S.Ct. at 3380 n. 6; *United States v. Agurs,* 427 U.S. 97, 110–11, 96 S.Ct. 2392, 2872–73, 49 L.Ed.2d 342 (1976); *Thomas v. United States,* 343 F.2d 49, 53–54 (9th Cir. 1965). This personal responsibility cannot be evaded by claiming lack of control over the files or procedures of other executive branch agencies. See *United States v. Muse,* 708 F.2d 513, 516 (10th Cir.1983)

---

**2.** Ms. Santo is not a party to this appeal. She pled guilty to possession of methamphetamine

with intent to distribute on October 9, 1991.

(prosecutor must produce for examination *Brady* matter in personnel files of government agents even if in possession of other agency) (dictum); *Martinez v. Wainwright*, 621 F.2d 184, 186 (5th Cir.1980) (prosecutor responsible for production of victim's "rap sheet" even if in possession of other government agency).

### B.

■ Exercise of the supervisory power is appropriate under three circumstances: (1) where a remedy for a violation of a recognized statutory, procedural, or constitutional right is required; (2) where judicial integrity must be preserved by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) where the court seeks to deter future illegal government conduct. *United States v. Hasting*, 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983); *United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991). Thus, under certain circumstances a district court may impose appropriate sanctions where prosecutors or federal law enforcement officers disobey the law. *Simpson*, 927 F.2d at 1090; *United States v. Ramirez*, 710 F.2d 535, 541 (9th Cir. 1983).

■ The supervisory power, however, is not without its limits. One such limit is our government's separation of powers. *See United States v. Dominguez–Villa*, 954 F.2d 562, 565 (9th Cir.1992); *Simpson*, 927 F.2d at 1089; *United States v. Moody*, 778 F.2d 1380, 1384 (9th Cir.1985), *amended on other grounds*, 791 F.2d 707 (9th Cir.1986); *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir.1985); *United States v. Chanen*, 549 F.2d 1306, 1313 (9th Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). The judiciary does not have a license to intrude into the authority, powers and functions of the [executive] branch[ ][,] [for] [j]udges are not ... executive officers, vested with discretion over law enforcement policy and decisions.... [T]he supervisory power ... empower[s] judges to formulate procedural rules not specifically contemplated by Congress or the Constitution, [but] it

does not justify a chancellor's foot veto over activities of coequal branches of government.

*Simpson*, 927 F.2d at 1089 (internal citations and quotation omitted).

■ We therefore interfere in the practices of the executive branch only when there is "a clear basis in 'fact and law' for doing so." *Gatto*, 763 F.2d at 1046 (quoting *Chanen*, 549 F.2d at 1313); *see also United States v. DeBright*, 730 F.2d 1255, 1257 (9th Cir.1984) (en banc). Absent a violation of a recognized right under the Constitution, a statute, or a procedural rule, a district court is not entitled to exclude evidence as a sanction against government practices disapproved of by the court. *Gatto*, 763 F.2d at 1046; *see also Schwartz*, 857 F.2d at 658; *cf. United States v. Miller*, 722 F.2d 562, 565 (9th Cir.1983) ("[C]ourts ... should avoid creating broad rules that limit traditional prosecutorial independence.").

### C.

■ In this case, the district court specified the procedures to be followed in examining the personnel files of federal law enforcement officer witnesses. We recently rejected another district court's broad reading of *Henthorn* that similarly required the personal effort demanded of the AUSA in these cases. *See United States v. Dominguez–Villa*, 954 F.2d 562, 565 (9th Cir.1992). As we did in *Dominguez–Villa*, we hold that the district court's orders in these cases were outside the scope of the court's supervisory power. Unless there was a clear basis in law or fact to believe that the orders were necessary, none of the three rationales for exercise of the supervisory power could justify them.

There was no violation or likely violation of any recognized right. We have never held that the prosecutor's obligations under *Brady*, *Bagley*, or *Giglio* require the personal effort demanded of the AUSA by the district court. To the contrary, we have previously allowed the government to comply with obligations similar to those imposed by *Brady* by submitting an affidavit

by a law enforcement officer personally familiar with the relevant facts. *See United States v. Tobias*, 836 F.2d 449, 453 (9th Cir.) (affidavit of FBI agent declaring that no electronic surveillance of defendant occurred complied with government's disclosure obligation under 18 U.S.C. § 3504), *cert. denied*, 485 U.S. 991, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988). Other courts have indicated that such a personal effort is not demanded because it places too much of a burden on the prosecutor. *See United States v. Smith*, 552 F.2d 257, 262 (8th Cir.1977); *United States v. Peltier*, 553 F.Supp. 890, 899 (D.N.D.1982), *aff'd in part and remanded on other grounds*, 731 F.2d 550 (8th Cir.1984) (per curiam). This view is persuasive, particularly in light of the government's expressed willingness to undertake a review of its law enforcement officer personnel files and to submit for in camera review any materials that may have arguable exculpatory value.[3]

There is also no indication that the government has not or will not comply with its duty faithfully to conduct review of the agents' personnel files. Thus, there is no basis to presume that any illegal conduct must be deterred. *Cf. In re Hergenroeder*, 555 F.2d 686, 686 (9th Cir.1977) (per curiam) (court should presume that government will obey the law). The defendants do not contend that the government has violated a recognized statutory, procedural or constitutional right. Thus, there is no need for the district court to provide any remedy.[4] *See Gatto*, 763 F.2d at 1046.

### D.

We are not unsympathetic to the district court's desire to hold the AUSA trying the cases accountable for compliance with *Henthorn* and its concern for fairness to the defendants. However, the presumption is that official duty will be done, and hence that the procedure instituted by the Department of Justice to ensure compliance with *Henthorn* will be tailored to those concerns. Adherence to this procedure would indicate that the AUSA is fulfilling his responsibility for ensuring government compliance with *Brady*. Personal review by the AUSA after being alerted to the presence of potential *Brady* material by agency staff lessens the chance that exculpatory information will go undiscovered by personnel unfamiliar with the facts of the case or the relevant criminal law involved. In addition, the court and the government understand that the prosecutor's duty to the court extends to ensuring the government's compliance with our decision in *Henthorn*. *See Chanen*, 549 F.2d at 1313 n. 5 (recognizing prosecutor's good faith duty to comply with the law).

### IV.

The orders of the district court excluding the testimony of the government's law enforcement officer witnesses in these consolidated cases are REVERSED. The cases are remanded to the district court for trial.

---

**3.** Counsel for the government informs us that the Department of Justice has instituted a policy designed to implement the holding of *Henthorn*. Under this policy, the files of law enforcement officers are to be examined by the appropriate agency's attorney or his staff. The agency legal staff will notify the federal prosecutor assigned to the case if any potential *Brady* material is found, and the AUSA will then determine whether the information should be disclosed or whether an in camera review by the district court is appropriate.

**4.** The second rationale for exercise of the supervisory authority—control over what the jury sees—is not implicated where no such statutory or constitutional violation occurs. In the absence of such a violation the district court's authority to control the out-of-court activities of the prosecutor is severely limited. *See United States v. Lau Tung Lam*, 714 F.2d 209, 210 (2d Cir.), *cert. denied*, 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 322 (1983). In any event, the Supreme Court has held that the supervisory power should not be exercised on this basis to exclude relevant evidence where the basis for the exclusion order does not constitute a violation of the Fourth Amendment. *See United States v. Payner*, 447 U.S. 727, 735–36, 100 S.Ct. 2439, 2446–47, 65 L.Ed.2d 468 (1980).