896 F.Supp. 982 (1995)
UNITED STATES of America, Plaintiff,
v.
Emanuel LACY, et al., Defendants.
No. CR-94-0384 MHP.
United States District Court, N.D. California.
August 18, 1995.
William Weiner, William Weiner Law Offices, San Francisco, CA, for defendant Gerome Lacy aka Red.
Frank Z. Leidman, Frank Z. Leidman Law Offices, San Francisco, CA, for defendant Lamarr Lacy.
Judd C. Iversen, Judd C. Iversen Law Offices, San Francisco, CA, for defendant Goldie Lacy.
Garrick S. Lew, Sol Wollock, Minami Lew & Tamaki, San Francisco, CA, for defendant Anthony Perry aka A.P. aka Tony.
Stuart Hanlon, Tony Tamburello, Tamburello Hanlon & Waggener, San Francisco, CA, for defendant Gordon Henderson, aka Big Hen aka Hendu.
James W. Ramsaur, Chapuis & Ramsaur, Oakland, CA, for defendant Marvin Hardeman.
*983 Paul B. Meltzer, Meltzer Leeming, Santa Cruz, CA, for defendant Henry Scott aka Red.
Martin R. Sabelli, Federal Public Defender's Office, San Francisco, CA, for defendant James Henry Davis aka Poncho.
Steve Emery Teich, San Francisco, CA, for defendant Luis Cornelio Orozco.
Christopher Cannon, San Francisco, CA, for defendant Jose Luis Padilla-Ozuna.
Arthur Pirelli, Arthur Pirelli Law Offices, San Francisco, CA, for defendant Emmitt Granville.
Gail Shifman, San Francisco, CA, for defendant Willie Young.
George C. Boisseau, Santa Rosa, CA, for defendant Damien Drew Rivers.
Barry L. Morris, Oakland, CA, for defendant Maurice Herring.
Peter Goodman, San Francisco, CA, for defendant Lavirrisse Jones.
Jeffrey S. Niesen, Kenneth H. Wine, Niesen & Associates, Sausalito, CA, for defendant Mary Cross.
John J. Jordan, U.S. Attorney's Office, San Francisco, CA, for plaintiff U.S.

OPINION
PATEL, District Judge.
In anticipation of pretrial evidentiary hearings in this matter,[1] defendants filed a motion for a ruling that the Assistant United States Attorney ("AUSA") himself must review the personnel files of federal agents called to testify at those hearings. By bench order at a motion hearing held on June 28, 1995, the court denied defendants' request. After further sua sponte review of Kyles v. Whitley, ___ U.S. ___, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), decided by the Supreme Court this term, the court issued an order on July 31, 1995 indicating its desire to reconsider the issue and ordering the parties to submit further briefing. The parties submitted simultaneous briefs on August 14, 1995, and oral argument was held on August 16, 1995.
Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following opinion.

DISCUSSION
In United States v. Henthorn, 931 F.2d 29, 30-31 (9th Cir.1991), the Ninth Circuit held that the government has a duty to examine the personnel files of law enforcement officers it intends to call as witnesses upon a request by a defendant for production of such files, and to turn over to the defense any material in those files that is favorable to the defense.
In denying defendants' motion to have the AUSA himself review the personnel files of testifying officers, this court based its ruling on the prevailing law in this Circuit, United States v. Jennings, 960 F.2d 1488 (9th Cir. 1992). In Jennings, the Ninth Circuit faced precisely the question presented by the defendants' motion, and ruled that an AUSA cannot personally be required to review law enforcement personnel files. Id. at 1491-92. Instead, the Ninth Circuit, noting the burden such a rule would place on a prosecutor and emphasizing that "the presumption is that the official duty will be done," approved a Department of Justice ("DOJ") procedure in which the relevant agency itself performs the review and then submits possibly relevant material to the AUSA for his or her determination as to whether it should be turned over to the defense. Id. at 1492, n. 3.
Subsequent to ruling on defendants' motion, this court examined Kyles v. Whitley, ___ U.S. ___, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), a recent Supreme Court case cited only in passing in defendants' motion papers. It is on the basis of Kyles that the court ordered further briefing on defendants' *984 motion, specifically on the issue of whether Kyles effectively overrules Jennings.
In Kyles, which involved the government's duty to turn over potentially exculpatory material pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Court discussed at great length a prosecutor's duty under Brady, and the critical concomitant duty personally to become aware of any such material in the possession of other government actors. Id. ___ U.S. at ___ _ ___, 115 S.Ct. at 1567-68. The Court wrote: "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Id. at ___, 115 S.Ct. at 1567.
The State of Louisiana argued in Kyles that a prosecutor cannot be held to turn over Brady material in possession of the police but of which he is not personally aware. The Court rejected that argument in no uncertain terms, again focussing on the personal duty of the individual prosecutor:
To accommodate the State in this manner would, however, amount to a serious change of course from the Brady line of cases. In the State's favor it may be said that no one doubts that police investigators sometimes fail to inform a prosecutor of all they know. But neither is there any serious doubt that procedures and regulations can be established to carry the prosecutor's burden and to insure communication of all relevant information on each case to every lawyer who deals with it. Since, then, the prosecutor has the means to discharge the government's Brady responsibilities if he will, any argument for excusing a prosecutor from disclosing what he does not happen to know about boils down to a plea to substitute the police for the prosecutor, and even for the courts themselves, as the final arbiters of the government's obligation to ensure a fair trial.
Kyles, ___ U.S. at ___, 115 S.Ct. at 1568. The Court concluded that "[t]his means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. This is as it should be." Id. (citation omitted).
Defendants now argue that Kyles effectively overrules Jennings, because Jennings allows a prosecutor to delegate his responsibility to government agencies in Washington, over whom the court has no supervisory powers, and where numerous levels of attorneys and clerks unfamiliar with the specific factual context of the case filter through the material, sometimes at several levels and in several departments, before anything reaches the AUSA prosecuting the case. Defendants also argue that under such circumstances, it is highly unlikely that all information relevant to an effective cross-examination of government agents will even reach the AUSA, much less the defense. Defendants also contend that in fact there is no way effectively to hold a prosecutor responsible under the DOJ procedure because there is little if any chance that anyone, including, perhaps, even the AUSA him or herself, will ever learn that the agency failed to turn over relevant material.
In response, the government insists that Kyles has changed nothing. Indeed, the government argues, all Kyles has done is reaffirm what the Ninth Circuit already has held in Henthorn and Jennings  that the prosecution ultimately is responsible for turning over material potentially helpful to the defense, and will be held responsible for a failure to do so. The government argues that nothing in Kyles alters the Ninth Circuit's recognition in Jennings that such a responsibility does not also mandate that an AUSA him or herself personally review the files, but only that an effective procedure for doing so be put in place. The government argues that the DOJ procedure approved of in Jennings, and apparently now routinely followed by the government, is such a procedure. In support of this argument, the government submits declarations from various federal agencies detailing the process employed for complying with Henthorn requests. See Government Exs. A-E.[2] Finally, the government contends that to require *985 individual prosecutors personally to review law enforcement personnel files would be unduly burdensome.
This court concludes that Kyles effectively has overruled Jennings, to the extent Jennings permits prosecutors to delegate to the relevant federal agencies the responsibility under Henthorn to review personnel files. It is impossible to reconcile Justice Souter's emphatic discussion of the importance of the prosecutor's personal duty to comply with the government's Brady obligations with the Ninth Circuit's holding in Jennings that permits the prosecutor to delegate the very essence of that duty to bureaucrats in Washington. Far from supporting the government's position, the declarations submitted by the government raise more questions than they answer. It is not apparent from the declarations whether attorneys always perform the initial review of files  it appears that clerks often perform some, if not all, of this vital function. Indeed, it is readily apparent that the various agencies' Henthorn processes[3] are something of a bureaucratic quagmire which involve a variety of people preparing "summaries" that bounce back and forth between supervisors, attorneys, and clerks, all before anything even reaches the desk of the AUSA who, everyone agrees, is "ultimately responsible." How an AUSA can, in good faith and as an officer of the court, accept such responsibility for work performed entirely by others not even under his or her control is somewhat of a mystery.[4]
Furthermore, it is clear from the declarations that none of the people performing the Henthorn review have any familiarity with the factual context of the particular case in which the request is made. This fact is particularly troubling, especially in light of Justice Souter's recognition in Kyles that "the character of a piece of evidence as favorable will often turn on the context of the existing or potential evidentiary record." Kyles, ___ U.S. at ___, 115 S.Ct. at 1568. Quite clearly, it is the United States Attorney's Office prosecuting the case  and only that office  which is sufficiently familiar with the factual nuances of the case and possible defenses to make the necessary judgment call on the relevancy of material in the personnel files.
At the hearing on this motion, the AUSA repeatedly assured the court that his office and his office alone is the prosecution  the FBI, DEA and other agencies only assist him in preparing the prosecution. However, he also repeatedly assured the court that he (and the defendants and the court) could rely on those agencies to perform the prosecution's duties under Henthorn. However, neither the AUSA nor this court has any supervisory power over those agencies. Thus, this situation is manifestly different from a situation, common in both criminal and civil practice, where an attorney who retains ultimate responsibility delegates work to subordinates such as other attorneys, paralegals, or clerks who work under his or her direction. Here, although the AUSA affirmatively acknowledges his personal responsibility for complying with Henthornand the court has absolutely no reason to doubt the sincerity of his intentions  neither he nor the court has any means of truly ensuring such compliance. Under Jennings, even assuming that the AUSA has the very best of intentions, there is no way for the AUSA or the court to ensure compliance with Henthorn.[5] Indeed, *986 the relationship and supervisory role here is far more distant and indirect than in Kyles, where a local prosecutor is dependent upon local police with whom he or she works regularly and in close proximity.
Adopting the lexicon of Justice Souter in Kyles, the situation as it exists under Jennings is like a ship captain anxious about tacking too close to the wind, but who must rely entirely on landbound compatriots to tell him the windspeed and directionals. Without ship's compass, radar or other instruments, the vessel is not seaworthy. If the information from shore proves insufficient, the mythical captain may suffer no more than the indignity of a rude dip in the water; a criminal defendant, on the other hand, has a great deal more at stake.
The government's argument that a rule requiring the AUSA personally to review personnel files would be unduly burdensome also must fail. There can be no question that such a rule would, in fact, be quite burdensome in cases as large and complex as the instant case. However, as an initial matter, there always will be some burden on the prosecutor, even under the Jennings approach. As the Court in Kyles put it, "the prosecution cannot be subject to any disclosure requirement without at some point having the responsibility to determine when it must act." Kyles, ___ U.S. at ___, 115 S.Ct. at 1568. A thorough reading of Kyles should leave no doubt about where the burden of providing Brady, Bagley,[6] and Giglio[7] material lies, and that it is non-delegable. "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles, ___ U.S. at ___, 115 S.Ct. at 1567 (emphasis supplied). In the face of Justice Souter's unequivocal statements, it is difficult to see how Jennings holds up.
Of course, when the individual prosecutor ultimately is held responsible for turning over exculpatory material, it will always be the case that at some point that prosecutor will be burdened with reviewing materials and making a judgment call on what is and is not necessary to turn over. Id. Thus, the question is not whether the prosecution should be burdened  under our constitution it bears that burden in order to vindicate fundamental due process rights. The question instead is whether protecting those rights warrants placing that duty solely on the person who is ultimately responsible and who is most intimately familiar with the facts of the case, or whether it can be delegated to others not even under his or her control. Contrary to Jennings, this court reads Kyles as holding that our constitution places the burden squarely on the prosecutor, not on agency clerks, functionaries and non-prosecuting attorneys who may have no trial experience, who have no knowledge of the facts and intricacies of the particular case, and who are three thousand miles away.
Furthermore, though the government protests that the burden of such a rule would be too great, it is the government, not the defendants, who choose what cases to bring and decide the breadth of the indictment and scope of the investigation. Having indicted a complex and burdensome case, they cannot be heard to complain that their own responsibilities are too burdensome. Further, the defendants cannot be forced to sacrifice their due process rights simply because it would be overly burdensome for the government to ensure them. When deciding the nature and the extent of charges to be brought, prosecutors must add to their calculations the attendant burden on themselves, and must include the fact that individual prosecutors (and their staffs) will be required to perform the Henthorn review.

*987 CONCLUSION

For the foregoing reasons, the court concludes that Kyles effectively overrules Jennings. Accordingly, the court hereby GRANTS defendants' request that the AUSA (and his office) be required personally to review the personnel files of agents testifying at preliminary hearings or at trial and for whom the defendants request such material.
IT IS SO ORDERED.
NOTES
[1] The first such hearing is scheduled to begin in September 1995.
[2] The declarations are from the Drug Enforcement Administration, the Immigration and Naturalization Service, the Bureau of Alcohol, Tobacco, and Firearms, the Internal Revenue Service, and the Federal Bureau of Investigation.
[3] The procedures employed by the different agencies differ greatly from one another  there is no "standard" Henthorn procedure practiced by all agencies.
[4] It may be, as defendants contend, that an AUSA has little if anything to lose from such reliance. Despite his claim to personal responsibility, it is the defendants' due process rights that are at stake, and there is little if any likelihood that a failure to disclose relevant material ever will be discovered. On the other hand, it may also be that United States Attorneys simply have more faith in either the capability, thoroughness, or good intentions of government agencies than may in fact be warranted. The court, of course, does not intend these comments in any way to reflect negatively on the particular AUSAs involved in this case. But it will be difficult for them to assess accurately the discharge of their responsibility when the responsibility of those upon whom they must depend is so far removed and unaccountable.
[5] The government argues that such will always be the case  that even if the AUSA personally reviews the files, he still must trust the agency to turn them over intact and complete. That argument proves too much. While it may be true that the court can never be entirely sure that the government has complied with its Henthorn obligations, at least it has supervisory power over the AUSA who, as an attorney and officer of the court, is bound both by legal and ethical obligations. By contrast, the court has no supervision over agency bureaucrats in Washington who may or may not be attorneys bound by professional ethics.
[6] United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
[7] Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).