**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Maurice HERRING, Defendant–Appellee.**

**Nos. 95–10521, 95–10541.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 20, 1996.

Decided May 13, 1996.

---

Patty Merkamp Stemler, United States Department of Justice, Washington, DC, for plaintiff-appellant.

Barry L. Morris, Oakland, California, for defendant-appellee.

Before: PREGERSON, NORRIS, and REINHARDT, Circuit Judges

PER CURIAM:

Under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the government has the obligation upon request to disclose to a criminal defendant material favorable evidence in the government's possession, including information about government witnesses that could be used to impeach them. *See United States v. Bagley*, 473 U.S. 667, 675–77, 105 S.Ct. 3375, 3379–81, 87 L.Ed.2d 481 (1985). In *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), we held that the government has a duty to examine the personnel files of testifying law enforcement officers for *Brady* material. *Id.* at 31. In *United States v. Jen-*

*nings,* 960 F.2d 1488 (9th Cir.1992), we held that an Assistant United States Attorney ("AUSA") may not be ordered by a district court to conduct that examination personally. *Id.* at 1491. Rather, we approved a policy proposed by the Department of Justice for the appropriate agency to examine its personnel files and notify the AUSA of any potential *Brady* material, as long as the AUSA makes the determination whether the material should be disclosed. *Id.* at 1492 & n. 3.

In this case, defendant Maurice Herring[1] filed a pre-trial motion for a ruling that the AUSA must personally review the personnel files of testifying federal agents. Relying on *Jennings,* the district court initially denied Herring's request, but later reconsidered its ruling sua sponte in light of *Kyles v. Whitley,* —— U.S. ——, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), and ruled that *Kyles* "effectively" overruled *Jennings.* District Court Opinion, filed August 18, 1995, at 5. When the district court issued a new order directing the AUSA personally to review the files, the government filed a notice of noncompliance, stating that the AUSA was refusing to review the files personally. Because of the government's noncompliance, the district court suppressed the testimony of the federal law enforcement witnesses. When the government conceded that it would be unable to prove its case without the excluded witnesses, the district court dismissed the indictment without prejudice. The government now appeals the order of dismissal.

The question we must decide is whether *Jennings* was effectively overruled by *Kyles.* We hold that it was not principally because *Kyles* did not address the question presented by *Jennings* and this case—whether the district court has the authority to issue a pretrial order requiring a prosecutor to review personnel files of testifying officers personally. Rather, *Kyles* was a post-conviction case involving the application of the well-established *Brady* rule that the prosecution's failure to disclose *Brady* material justifies a new trial, regardless of whether that failure "is in good faith or bad faith." *Kyles,* —— U.S. at ——, 115 S.Ct. at 1567. In *Kyles,*

---

1. Herring was indicted along with 17 other defendants for conspiracy to sell cocaine.

the *Brady* material was known to the police but not to the prosecutor, from whom the police had withheld it. *Id.* at ——, 115 S.Ct. at 1568. The State of Louisiana argued that *Brady*'s requirement of a new trial should not apply in these circumstances because the State should not be accountable for evidence known only to police and not to the prosecutor. *Id.* The Court rejected that argument, explaining that "[t]o accommodate the State in this manner would ... amount to a serious change of course from the *Brady* line of cases." *Id.* Instead, it stressed the prosecutor's duty to "learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police," and reaffirmed that "whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable." *Id.* at —— ——, 115 S.Ct. at 1567–68 (citation omitted). In so doing, the Court acknowledged that this rule places a burden on government, given that "police investigators sometimes fail to inform a prosecutor of all they know," *id.* at ——, 115 S.Ct. at 1568, but observed that prosecutors could alleviate this burden by establishing procedures and regulations to facilitate the communication of relevant information. *Id.*

2. We would, of course, be at liberty to revisit *Jennings* if we believed it had been undermined by *Kyles*. *See Palmer v. Sanderson*, 9 F.3d 1433, 1437 n. 5 (9th Cir.1993) (a three-judge panel may reexamine an earlier decision of a three-judge panel if that decision has been undermined by later overriding precedent) (quoting *United States v. Magana*, 797 F.2d 777, 779 (9th Cir.1986)). However, for the reasons given in the text, we do not believe *Jennings* has been undermined by *Kyles*.

3. *Jennings*, like *Henthorn*, was an appeal from a district court's ruling on a pre-trial discovery motion. In *Henthorn*, the defendant sought a pre-trial order requiring the prosecution "to produce the personnel files of all law enforcement witnesses whom it intends to call at the trial ...." *Henthorn*, 931 F.2d at 30. The government responded that it had no obligation to examine the personnel files absent a showing by the defendant that the files contained information material to his defense. *Id.* The district

In interpreting *Kyles* as "effectively" overruling *Jennings*, the district court relied primarily on the language in *Kyles* that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles*, —— U.S. at ——, 115 S.Ct. at 1567. We must respectfully disagree with the district court that this language provides a basis for declaring that *Jennings* does not survive *Kyles* as the law of our circuit.[2] There is no reason to believe that when the Supreme Court decided *Kyles*, it even had in mind the *Jennings* question of a district court's authority to issue pre-trial discovery orders requiring prosecutors to conduct searches for *Brady* material and to impose sanctions for noncompliance.[3] *Kyles* was a post-conviction case, not a pre-trial discovery order case. Whatever the Court may have had in mind in using the "duty" language in the context of a post-conviction case, the language provides no guidance for deciding whether a district court may issue pre-trial discovery orders requiring prosecutors to review personnel files personally.[4]

We hold that *Jennings* survives *Kyles* as the law of our circuit. Accordingly, we VACATE the district court's order dismissing the indictment without prejudice and its order granting the defendant's request that the AUSA be required to review the personnel files of testifying agents personally, and REMAND for further proceedings. In so doing,

court agreed and denied the defendant's discovery motion. *Id.* This court disagreed, holding that the government has a duty to examine the files upon request, and that the defendant need not show materiality. Accordingly, this court reversed and remanded to allow the district court to conduct an in camera examination of the files. *Id.* at 31.

In *Jennings*, the district court issued an order requiring the AUSA prosecuting the case personally to review the personnel files of testifying officers. *Jennings*, 960 F.2d at 1489. When the government refused to comply with the order, the district court suppressed the testimony of those officers. *Id.* On appeal, we reversed, holding that the district court lacked authority to suppress the testimony because personal review of the files by the AUSA was not required by any statute, procedural rule, or the Constitution. *Id.* at 1491.

4. Moreover, as we read that language, it is unnecessary to the Court's decision in *Kyles*.

we express no opinion as to whether the method by which the AUSA proposes to locate and identify *Brady* material in this particular case satisfies the requirements of *Henthorn.* We hold only that *Jennings* survives *Kyles* as the law of the circuit.